IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| JEROME PAVLIN and<br>CARLA PAVLIN, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| vs. | ) | No.   09 C 50154 |
| | ) | |
| McHENRY COUNTY, *et al.*, | ) | Judge Frederick J. Kapala |
| | ) | |
| Defendants. | ) | Magistrate Judge P. Michael Mahoney |

### DEFENDANTS' RESPONSE TO PLAINTIFFS' LR 56.1(b)(3)(c) STATEMENT OF ADDITIONAL MATERIAL FACTS

Defendants, David Shepherd, Gregory Pyle, Jeremy Bruketta, Christopher Jones, Kyle Mandernack, Trevor Vogel and Ryan Lambert, for their response to plaintiffs' LR 56.1(b)(3)(c) Statement of Additional Material Facts, state as follows:

1. Defendants Bruketta and Jones did not say anything to Carl before they forced entry into the Plaintiff's home.[1]

   **ANSWER:**   Objection. Immaterial. Admitted.

2. Defendants Bruketta and Jones did not have any information that criminal activity was occurring inside the Plaintiffs' home.[2]

   **ANSWER:**   Denied. Carl Pavlin attempted to evade arrest by fleeing into the house. (Bruketta dep., pp. 55-57, Ex. 3; Jones dep., pp. 38, 40, Ex. 1; Carl Pavlin dep., pp. 25-28).

3. The front door to Plaintiffs' home has three panes of glass.[3]

---

[1] Plaintiffs' Ex. 3, Carl Pavlin's Deposition, p. 26

[2] Plaintiffs' Ex. 1, Defendant Bruketta's Deposition, p. 152

[3] Plaintiffs' Ex. 8, Carla Pavlin's Deposition, p. 19

> **ANSWER:** Denied. The front doors (french doors) each had a single glass panel and each panel was made of triple-pane glass with a decorative "stained" glass pane in the center. (Carla Pavlin dep., pp. 18-19).

4. Only the exterior pane of glass broke when Defendants pushed into the Plaintiffs' front door.[4]

> **ANSWER:** Denied. An entire panel of triple-pane glass in one of the two doors was broken. (Carla Pavlin dep., p. 19).

5. As Carl Pavlin was being escorted out of the Plaintiffs' home, Defendant Pyle was on his way into the Plaintiffs' home.[5]

> **ANSWER:** Objection. Immaterial. Admitted that this is how Carl testified but this testimony is inconsistent with other evidence of record. (See, *e.g.*, Carla Pavlin dep., p. 55).

6. Jerome Pavlin told Carla Pavlin to call 911 because the Defendant-Officers would not leave his home after he asked several times.[6]

> **ANSWER:** Denied. Jerome told Carla to call 911 because he wanted the "local" or Crystal Lake P.D. (Jerome Pavlin dep., pp. 37-38).

7. Carla Pavlin observed Defendants Mandernack and Vogel slam Jerome to the ground.[7]

> **ANSWER:** Denied. Jerome's testimony was that a single officer took him to the ground using a "judo move." (Jerome Pavlin dep., p. 37).

8. Prior to being slammed on the ground, Jerome told the Defendant-Officers that they

---

[4] Plaintiffs' Ex. 8, Carla Pavlin's Deposition, p. 19

[5] Plaintiffs' Ex. 3, Carl Pavlin's Deposition, pp. 33-34

[6] Plaintiffs' Ex. 7, Jerome Pavlin's Deposition, pp. 37-38

[7] Plaintiffs' Ex. 8, Carla Pavlin's Deposition, p. 43; Plaintiffs' Ex. 5. Defendant Vogel's Deposition, p. 74

could not search his home and to get out of his home.[8]

    **ANSWER:** Denied. Jerome refused consent to a search *after* being handcuffed. (Jerome Pavlin dep., pp. 42-43).

9. Carla Pavlin observed a third Defendant-Officer knee Jerome in his back.[9]

    **ANSWER:** Denied. Jerome denied such contact. (Jerome Pavlin dep., pp. 45-47).

10. Defendant Bruketta was the third officer on the ground with Jerome.[10]

    **ANSWER:** Objection. Immaterial. Admitted that Bruketta testified that he assisted with handcuffing Jerome.

11. Defendant Bruketta claimed he was outside of the house at the time of the incident, but he was recorded telling a dispatcher that he was "on the ground cuffing people."[11]

    **ANSWER:** Objection. Immaterial. Admitted.

12. Carla attempted to get Defendant Mandernack's attention by touching his shirt.[12]

    **ANSWER:** Admitted that this was Carla's testimony.

13. Carla did not jump on Defendant Mandernack's back.[13]

    **ANSWER:** Admitted that this was Carla's testimony.

14. Defendant Mandernack got up from cuffing Jerome, faced Carla, and struck Carla as hard as he could in her chest.[14]

---

[8] Plaintiffs' Ex. 8, Carla Pavlin's Deposition, pp. 41-43

[9] Plaintiffs' Ex. 8, Carla Pavlin's Deposition, p. 43;

[10] Plaintiffs' Ex. 1, Defendant Bruketta's Deposition, p. 153

[11] Plaintiffs' Ex. 1, Defendant Bruketta's Deposition, pp. 153, 169-170

[12] Plaintiffs' Ex. 8, Carla Pavlin's Deposition, pp. 43-44

[13] Plaintiffs' Ex. 8 Carla Pavlin's Deposition, pp. 43-48, 50

[14] Plaintiffs' Ex. 8, Carla Pavlin's Deposition, p. 48

    **ANSWER:**    Admitted that this was Carla's testimony.

15.    Defendants Lambert, Vogel and either Jones or Bruketta stood and watched Mandernack push Carla into a granite shelf.[15]

    **ANSWER:**    Denied. The cited testimony stands for the proposition that Lambert and others saw Carla jump on Mandernack's back and then stumble backwards when Mandernack pushed her away. (Lambert dep., pp. 36-38).

16.    When Defendant Shepherd arrived on the scene, he gave Defendant Jones instructions about how to write his report to justify how the officers got into Plaintiffs' home.[16]

    **ANSWER:**    Denied. Mischaracterizes testimony. (Shepherd dep., p. 38).

17.    After the incident at the Plaintiffs' home, back at the patrol area of the McHenry County Sheriff's Department, Defendant Jones told Defendant Mandernack to have his trainee, Defendant Lambert, put false information into his report.[17]

    **ANSWER:**    Denied. Objection. Declaration of Zane Seipler is inadmissible and does not support this contention. (Fed. R. Civ. P. 56(e); F.R.E. 803; see defendants' final reply memorandum).

18.    When Defendant Jones observed Zane Seipler at the patrol office, he instructed the other Defendants to finish their reports the next day when Seipler would not be around.[18]

    **ANSWER:**    Denied. Objection. Declaration of Zane Seipler is inadmissible and does not support this contention. (Fed. R. Civ. P. 56(e); F.R.E. 803; see defendants' final reply memorandum).

19.    The next day, March 15, 2008, Seipler went to work early and observed Defendants

---

[15] Plaintiffs' Ex. 6, Defendant Lambert's Deposition, pp. 36-38

[16] Plaintiffs' Ex. 10, Defendant Shepherd's Deposition, p. 38-39

[17] Plaintiffs' Ex. 11, Declaration of Zane Seipler, ¶ 6

[18] Plaintiffs' Ex. 11, Declaration of Zane Seipler, ¶ 8

Jones, Bruketta and Mandernack working on their reports together.[19]

> **ANSWER:** Denied. Objection. Declaration of Zane Seipler is inadmissible and does not support this contention. (Fed. R. Civ. P. 56(e); F.R.E. 803; see defendants' final reply memorandum).

20. On May 28, 2009, Wendy Wesolek, a court services officer, met with Assistant McHenry County States Attorney Ryan Blackney and provided him information regarding the arrest of the Plaintiffs that she learned from Defendant Lambert.[20]

> **ANSWER:** Denied. Objection. The Blackney memorandum is inadmissible hearsay and does not support this contention. (Fed. R. Civ. P. 56(e); F.R.E. 803; see defendants' final reply memorandum; Wesolek dep., pp. 25-29, attached).

21. Wendy Wesolek told Ryan Blackney that the Defendant-Officers got together the morning after the incident and wrote their reports together.[21]

> **ANSWER:** Denied. Objection. The Blackney memorandum is inadmissible hearsay and does not support this contention. (Fed. R. Civ. P. 56(e); F.R.E. 803; see defendants' final reply memorandum; Wesolek dep., pp. 26-29, 42-44, attached).

22. Lambert told Wendy Wesolek that supervisors made suggested changes to what was written in the reports.[22]

> **ANSWER:** Denied. Objection. The Blackney memorandum is inadmissible hearsay and does not support this contention. (Fed. R. Civ. P. 56(e); F.R.E. 803; see defendants' final reply memorandum; Wesolek dep., pp. 26-29, 42-44, attached).

23. After the meeting with Wendy Wesolek, Ryan Blackney met with the Chief of the

---

[19] Plaintiffs' Ex. 11, Declaration of Zane Seipler, ¶ 10

[20] Plaintiffs' Ex. 13, McHenry County Interoffice Memorandum

[21] Plaintiffs' Ex. 13, McHenry County Interoffice Memorandum

[22] Plaintiffs' Ex. 13, McHenry County Interoffice Memorandum

DefsRespAddlFacts -5-

Criminal Division of the McHenry County State's Attorney's office, Nichole Owens.[23]

> **ANSWER:** Objection. The Owens memorandum is inadmissible hearsay and does not support this contention. (Fed. R. Civ. P. 56(e); F.R.E. 803; see defendants' final reply memorandum).

24. Nichole Owens re-examined the case and found substantial inconsistencies regarding the events that transpired inside the Pavlins' residence and therefore dismissed the criminal charges that were pending against the Pavlins.[24]

> **ANSWER:** Objection. The Owens memorandum is inadmissible hearsay and does not support this contention. (Fed. R. Civ. P. 56(e); F.R.E. 803; see defendants' final reply memorandum).

/s/ Stephen E. Balogh
Stephen E. Balogh
Attorney for defendants,
JEREMY BRUKETTA, KYLE MANDERNACK, TREVOR VOGEL, CHRISTOPHER JONES, RYAN LAMBERT, GREG PYLE, AND DAVID SHEPHERD
WilliamsMcCarthy LLP
120 W. State St., Suite 400
P.O. Box 219
Rockford, IL 61105-0219
Telephone: (815) 987-8946
Facsimile: (815) 968-0019
E-mail: sbalogh@wilmac.com

---

[23] Plaintiffs' Ex. 14, Summary of Incident

[24] Plaintiffs' Ex. 14, Summary of Incident

-7-

## CERTIFICATE OF LAWYER

The undersigned hereby certifies that on June 8, 2011, I electronically filed the foregoing instrument with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Attorney Louis J. Meyer  
Meyer & Kiss, P.C.  
53 West Jackson St.  
Chicago, IL 60604

Attorney Julie M. Koerner  
O'Halloran, Kosoff, Helander & Geitner, P.C.  
650 Dundee Road, Suite 475  
Northbrook, IL 60062

    /s/ Stephen E. Balogh  
Stephen E. Balogh  
Attorney for defendants,  
JEREMY BRUKETTA, KYLE MANDERNACK, TREVOR VOGEL, CHRISTOPHER JONES, RYAN LAMBERT, GREG PYLE, AND DAVID SHEPHERD  
WilliamsMcCarthy LLP  
120 W. State St., Suite 400  
P.O. Box 219  
Rockford, IL 61105-0219  
Telephone: (815) 987-8946  
Facsimile: (815) 968-0019  
E-mail: sbalogh@wilmac.com